

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 17, 2019

**BY ECF**
The Honorable Nelson S. Roman
United States District Judge
300 Quarropas Street
White Plains, New York 10601-4150

   Re: **United States** v. **Richard M. Valentine, Jr.,**
      **19 Cr. 168 (NSR)**

Dear Judge Roman:

  The defendant is scheduled to be sentenced in the above-captioned case on September 18, 2019, at 11:00 a.m. The Government respectfully submits this letter in connection with that sentencing and in response to the defendant's sentencing memorandum ("Def. Mem.") dated September 11, 2019. While the defendant's conduct is undeniably serious, for the reasons set forth below, the Government respectfully submits that a sentence of three years' supervised release with no term of incarceration would be sufficient, but no greater than is necessary, to achieve just punishment for the defendant's crime, to protect the public, and to promote respect for the law.

## Background

**A. The Instant Offense**

  As summarized in the Presentence Investigation Report ("PSR"), the defendant comes before the Court to be sentenced after pleading guilty to making a false statement during an attempted purchase a firearm, in violation of 18 U.S.C. § 922 (a)(6). Valentine came to the attention of the FBI in early 2018 when the agency received an online tip from an individual who reported that Valentine had become radicalized. In particular, the individual reported that Valentine had come to embrace "radicalized Islamic beliefs" and was, among other things, talking about "spilling blood." Thereafter, a review of Valentine's public social media accounts revealed that he had made statements and posts supportive of ISIS and had pledged allegiance to its leader, Abu Bakr al Baghdadi.

  In February 2018, Putnam County health authorities issued an order authorizing Valentine's involuntary admission for mental health treatment. Prior to Valentine's admission, FBI agents conducted a Mirandized interview of Valentine in which the defendant admitted his support for ISIS. Valentine also made statements reflecting his apparent mental health issues, including statements indicating that he believed he was a Muslim Jesus figure. On the same date, the FBI also conducted a judicially-authorized search of Valentine's residence. The FBI's

Hon. Nelson S. Roman
September 17, 2019
Page 2 of 5

review of electronic media seized from the residence revealed materials reflecting Valentine's support for ISIS, including extremist propaganda and photographs of Valentine holding a rifle and wearing Middle Eastern attire. Valentine was released from the hospital several days after the execution of the search warrant.

In April 2018, county health officials again issued an order authorizing Valentine's involuntary admission for mental health evaluation and treatment due to their determination that he posed a risk to himself and/or others. During his hospital stay, Valentine was advised of and acknowledged his involuntary commitment for mental health reasons. Valentine was released from the hospital approximately six days later.

On June 2, 2018, Valentine traveled to a firearms store in Dutchess County, New York, where he browsed the store for approximately 15 to 20 minutes. Thereafter, Valentine approached a store employee holding a bolt action rifle and stated that he wanted to purchase the rifle. The store employee provided Valentine an ATF Form 4473, which Valentine completed. In answering the questions on the form, Valentine made a knowingly false statement. In particular, in response to the form's question, "Have you ever been adjudicated mentally defective or have you ever been committed to mental institution?" Valentine answered "no." Due to additional statements made orally by Valentine in attempting to purchase the firearm, the store employee refused to proceed with the firearms sale.

On June 24, 2018, law enforcement officers observed Valentine walking on the streets of Cold Spring, New York wearing a white robe and head covering while carrying a BB gun on a sling around his shoulder. After returning to his residence, Valentine exited his residence without the gun and acted suspiciously, moving behind and between parked vehicles in the area. After again entering and emerging from his residence, this time carrying a knife around his neck, Valentine was arrested by local police and taken to a hospital for evaluation. Upon his release from the hospital on July 4, 2018, federal law enforcement officers arrested Valentine for the instant offense.

### B. The PSR and Guidelines Calculation

The parties' plea agreement reflects the same Guidelines Range as the Presentence Investigation Report, namely, a range of 10 to 16 months' imprisonment, a maximum of three years' supervised release, and a fine of $5,500 - $55,000.

## Discussion

### A. Applicable Law

The United States Sentencing Guidelines still provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated,

Hon. Nelson S. Roman
September 17, 2019
Page 3 of 5

"a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *Uted States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

**B.     Analysis**

The defendant's crime and his surrounding conduct were undoubtedly serious. The defendant's behavior over the course of many months reflected a disturbing pattern and posed a potentially serious danger the public. Indeed, the defendant's mental illness contributed a sudden and precipitous downward spiral in his life, leading an otherwise normal and productive young man from a small New York town to pledge allegiance to a violent foreign terrorist group; make statements embracing violence; and provide false information in an attempt to procure firearms—efforts, which, if successful, could have ended in violent and tragic consequences..

Despite the undisputed seriousness of the defendant's crime, however, the Government respectfully submits that a sentence of supervised release is sufficient to punish the defendant.

First, with regard to the need to afford adequate deterrence, the defendant's recent conduct has made clear that his arrest and subsequent mental health treatment have had a transformative effect on his behavior and mental state. Indeed, by all accounts from his doctors, the defendant has complied with his medical treatment program and has expressed an

Hon. Nelson S. Roman
September 17, 2019
Page 4 of 5

understanding of, and remorse for, his past conduct.  Indeed, the defendant has expressed his gratitude for the arrest, which he has said prevented him from returning to his past behaviors.  Accordingly, the Government believes that individual deterrence has already been been largely achieved in this case, and a sentence of incarceration is unnecessary to deter Valentine from committing further crimes.  Similarly, the Government does not believe that the objectives of general deterrence require a sentence of incarceration here, given the significant mental health issues that likely contributed to his conduct.

Turning to the need to protect the public, the Government believes that a substantial term of supervised release will adequately achieve this objective.  Valentine's examining physicians all have reported that he no longer poses a danger to himself and others.  Thus, the Government respectfully submits that the most important goal the Court should seek to achieve in imposing sentence is to ensure the defendant continues to receive medical health treatment and evaluation so that he does not return to his prior extremist beliefs and actions.  The first special condition recommended by the Probation Department—that the defendant participate in an outpatient medical treatment program—provides the best available mechanism to achieve this goal.

Finally, the Government respectfully submits that the need to provide educational opportunities, vocational training, and medical treatment can also be achieved most effectively through a period of supervised release, rather than a term of incarceration.  The defendant recently was accepted to a university where he intends to complete his college degree.  Moreover, the conditions of release proposed by the Probation Department require the defendant to obtain employment and, as noted above, to receive mental health treatment.  Given the progress the defendant has made since his arrest, and the apparent remorse he has expressed for his offense conduct, the Government agrees with defense counsel that the defendant will become a more productive citizen if he is subject to a rigorous program of supervised release but is not required to serve a term of incarceration.

Hon. Nelson S. Roman
September 17, 2019
Page 5 of 5

      Therefore, while the Government believes that the defendant's actions (including his support for ISIS and the other disturbing conduct surrounding his offense conduct) were serious and posed a significant danger to the public, the Government respectfully submits that a sentence of three years' supervised release would be sufficient, but no greater than necessary, to achieve the aims of sentencing.

                                                     Very truly yours,

                                                     GEOFFREY S. BERMAN
                                                     United States Attorney

                                By:    /S/_____
                                       Andrew J. DeFilippis
                                       Assistant United States Attorney
                                       (212) 637-2345

cc:     Christopher X. Maher, Esq. (via ECF)