190918valentineS          Sentence

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA

            v.                          19 Cr. 168 NSR

RICHARD M. VALENTINE,

                  Defendant.

------------------------------x

                                        United States Courthouse
                                        White Plains, N.Y.
                                        September 18, 2019
                                        11:09 a.m.


Before:

            THE HONORABLE NELSON S. ROMÁN,

                                        District Judge


                        APPEARANCES


GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
ANDREW DeFILIPPIS
     Assistant United States Attorney

CHRISTOPHER X. MAHER
     Attorney for Defendant Richard Valentine

ALSO PRESENT: Special Agent Keely McCarthy, FBI
              Special Agent Brian Benway, FBI


          SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
                        (914)390-4053

190918valentineS          Sentence

(In open court)

THE DEPUTY CLERK:  In the matter of the United States v. Richard Valentine.

Will counsel please state your appearance for the record, beginning with the government.

MR. DeFILIPPIS:  Good morning, your Honor. Andrew DeFilippis for the government.  With me at counsel table are Special Agents Keely McCarthy and Brian Benway of the FBI.

THE COURT:  Good morning to you all.

MR. MAHER:  Christopher Maher, M-A-H-E-R, for Mr. Valentine, who is present to my left.  Good morning.

THE COURT:  Good morning to you and your client.  You can remain seated throughout this proceeding.

This is a proceeding in the matter of the United States v. Richard M. Valentine, Docket No. 19 Cr. 168, and it's intended to be the sentencing of the defendant.

The Court notes for the record that the defendant is present in the courtroom and is seated next to his attorney.

I have reviewed the Presentence Investigation Report filed on July 16, 2019, which was prepared in connection with today's sentencing of Mr. Valentine; the government's submission dated September 17, 2019; and the defendant's submission dated September 11, 2019, including letters from his friends, family members and numerous doctors.

Has the government reviewed the presentence report?

190918valentineS          Sentence

MR. DeFILIPPIS:  Yes, your Honor.

THE COURT:  And does the government have any objections to the presentence report?

MR. DeFILIPPIS:  No objections.

THE COURT:  All right.  Has defense counsel reviewed the presentence report?

MR. MAHER:  I have, and no objection on behalf of the defendant.

THE COURT:  Did you discuss the presentence report with your client?

MR. MAHER:  Yes, your Honor.

THE COURT:  Okay.  At this time, I would ask your client to please rise.

Mr. Valentine, did you have an opportunity to read and review the presentence report?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you discuss the presentence report with your attorney?

THE DEFENDANT:  Yes, I did, your Honor.

THE COURT:  Okay.  Count One of the information charges you with making a false statement during the purchasing of a firearm, in violation of Title 18, United States Code, Section 922(a)(6).  Specifically, it charges that on or about June 2, 2018, you attempted to acquire a firearm from a licensed dealer of firearms and knowingly made false and

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

190918valentineS            Sentence

fictitious oral and written statements, which were intended to and likely to deceive the dealer with respect to a fact material to the lawfulness of the sale of the firearm.

Count Two of the information charges you with making a false statement on the firearm filing, in violation of Title 18, United States Code, Section 924(a)(1)(A).  Specifically, it charges that on or about June 2, 2018, you knowingly made false and fictitious written statements to a licensed dealer of firearms on the ATF form, Form 4473, in connection with the attempted purchase of advanced armament.

On April 19, 2019, you allocuted to a non-binding written plea agreement to the criminal conduct as charged in Count Two only.

At this time, you may be seated, Mr. Valentine.

Does the government have any comments or considerations before I impose sentence on the defendant?

MR. DeFILIPPIS:  Very briefly, your Honor.

The government, as stated in our sentencing submission, we recognize and acknowledge, I think as the defense does, that the defendant's conduct was very serious. He entered a suddenly and precipitous downward spiral in his life, which we think was triggered largely by mental illness. It caused him to do things that were posing a serious potential danger to the public, in terms of pledging allegiance to ISIS, walking around with a BB gun, attempting to purchase a firearm

190918valentineS          Sentence

and ultimately leading to the misstatement on the form that he filed in connection with that attempted purchase.

But as the defense notes in their submission, and as we note in ours, as well, the defendant's arrest and the subsequent mental health treatment that he's received seems to have triggered a major turnaround, a transformation in his behavior, in his well-being.

The government has had a chance to meet with Mr. Valentine since his arrest and guilty plea, and we do agree with the defense that it has been a remarkable change from his conduct that led to his arrest. By all accounts, he's taking his medication. By all accounts, he is remorseful for what he did. And by all accounts, he is on the right path.

So, in this instance, your Honor, it's a credit to the defendant and to the FBI. It seems that the system has worked so far, and he has not violated any of the conditions of his release and seems to be on a path to restoring his life and his productivity.

So, it's for those reasons that in our submission, we agree with the defense that a term of incarceration here would not be productive. We think that a rigorous regiment of supervised release, that includes a requirement of mental health treatment, is the best way to ensure that the defendant stays on the right path. It's the best way to ensure that he does not revert to criminal conduct, and, most importantly, to

190918valentineS          Sentence

ensure that his mental health is stable and continued.

So, we recognize there's a need to deter conduct like the conduct the defendant engaged in.  There is a need to protect the public, but, thankfully, it seems that the measures the government has taken so far have done that and we think will continue to do that.

For those reasons, we do think that a substantial term, the maximum term of supervised release is appropriate, three years, with all the conditions that the probation department lays out in terms of mental health, search and seizure, and progress reports to the probation officer.  But we do think that that is the best way to ensure the defendant's well-being and the public's well-being.

THE COURT:  Thank you, Counsel.

Does defense counsel have any comments with regards to his client's sentence at this time?

MR. MAHER:  Yes, your Honor.

I obviously concur with the comments just made by the government, your Honor.  This is one case in 100, and I always say it's the one case in 100 where you tell your client the things that he or she needs to do, and you hope, since it's out of your direct control, that they do it.

The one comment that I didn't hear from the government, it's central to this good result that presents itself this morning, your Honor, is that my client's parents -

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

190918valentineS          Sentence

although my client was 23 at the time he was arrested, he's now 24 - my client's parents got very, very actively involved, and they're seated in this courtroom, they've been here each and every prior time this case has been on and got very involved as a family in really supervising the conduct of my client from that dark time in the spring and summer of 2018 up to now, Judge.

The Court is in possession of a plethora of letters from people and reports from Dr. Spitaletta, who was my client's treating psychiatrist, as well as Miriam Surval, his licensed clinical social worker, who I happened to have spoken to earlier this morning.  And, as Mr. DeFilippis said, Judge, this case is that one case where, if there's anything screaming out for something outside of a sentence that would be considered in the norm for a case like this, it's this case.

My client sits here today, Judge, having come from the circumstances that are set forth in the deferred prosecution documents I submitted last November and in all of the reports since then, he sits here today, Judge, he's a full-time student in college at Mount Saint Mary's in Newburgh. He's in a business program there.  And he realizes, and I hear it in his voice every time I talk to him, and not just that, Judge, but if the Court looks at his mugshot photograph from July 4, 2018, as opposed to the way he looks today, it's dramatic - and that doesn't accurately convey it, Judge,

190918valentineS          Sentence

because most of the improvement has come internally with my client.

He realizes that he is going to have a lifelong struggle as somebody with a mental illness condition, from whatever the source, that he's going to have to deal with on a day-to-day basis, and he has done that.  And there was a great deal of coordination that had to be done by his family in assisting him in the early stages of this, Judge, because his bail condition on release was that he was on home detention. He was isolated up in Cold Spring, New York.  He had no other means to get anywhere, and his parents, luckily, made themselves available because they, too, realized what he needs and that he's not only going to need it the day he got arrested or today.  He's going to need it every day henceforth.  I obviously concur and join in the people's application, Judge. I think a supervised release program, with the conditions set forth, serves all of the purposes for which this prosecution was brought and which the sentence that my client stands ready to have imposed on him by this Court, Judge.

My client has prepared a statement he wishes to read to the Court, so I would ask the Court to please consider that.

THE COURT:  Before your client provides a statement, I have a couple of questions.  You mentioned that he's attending a college.

Is he currently enrolled in school?

190918valentineS          Sentence

MR. MAHER:  Yes, 13 credits, Judge, degree-granting program from Mount Saint Mary's in Newburgh.

The Court is in possession --

THE COURT:  So, he's attending -- bear with me.  He's attending class currently, correct?

MR. MAHER:  Yes.

THE COURT:  And what type of schedule does he have?  Is he attending class on a daily basis?  Three days a week?

MR. MAHER:  He has several days a week of class.  I don't have his current schedule.  I can provide it to the Court.

THE COURT:  Mr. Valentine -- if you don't mind your client answering the question.

You can remain seated.  How often do you attend class?

THE DEFENDANT:  Your Honor, I attend class every day.  Tuesdays and Thursdays, I have class in the morning; and on Monday, Wednesday and Friday, I have class in the afternoon.

THE COURT:  And what is your weekend schedule like?

THE DEFENDANT:  I'm free on my weekends.

THE COURT:  And I don't mean to pry, but it's relevant information.  I take it, you have medical appointments that you have to abide by?

THE DEFENDANT:  Yes.

THE COURT:  And all of those medical appointments are

190918valentineS            Sentence

on the weekends or during the weekdays?

THE DEFENDANT:  During the week.

THE COURT:  What is your weekend schedule like?

THE DEFENDANT:  Usually, I do my homework.  Sometimes I socialize when I can, but for the most part, I'm free, if I need to attend any type of meeting or whatnot.

THE COURT:  I guess I'm going to ask this question, and perhaps it may be a question that you may want to consult with your client, Counsel, before you answer:  Were the Court to impose a period of home confinement, how would that interfere with his attending school and attending to his medical needs?

MR. MAHER:  Aside from the schedule that my client has given the Court of medical and academic appointments, Judge, it clearly is not going to interfere, or, as I see the Court asking the question, I understand why, it won't necessarily interfere with that, but he's been on home confinement from July 4 to April of this year, July 4, 2018, Judge, when he was arrested, to the spring of this year.  And I submit to the Court, that under those circumstances, that his confinement to his home for that period of time was more than adequate confinement if what we really want at the end of this proceeding, your Honor, is for my client to have learned, in a positive way, about what happened to him and what he's done since then.

190918valentineS          Sentence

So, with my sense of where I think the Court may be inclined to go, I just can't see it here.  It really fundamentally seems to me, Judge, unfair to my client.  He has done nothing, nothing whatsoever, your Honor, since July 4, 2018, when he became incarcerated, locked up, to ever be deemed in any way violative of any of his conditions of release or any --

THE COURT:  I understand that, but at the same time, part of the conditions of his release included home confinement.

MR. MAHER:  Up until the spring of this year, when his conduct was deemed to be so positive and corrective in nature, your Honor, that the home confinement aspect of his conditions of bail that was set back on July 4 of 2018, it wasn't considered necessary or therapeutic or preventive of anything that it may be designed to prevent.

So, I think, frankly, respectfully, your Honor, in this situation, it seems to me that to put him back on, let's call it weekend home confinement, I'm having a difficult time seeing anything positive coming out of it.

THE COURT:  Well, that may be your view, but it may not necessarily be my view.

MR. MAHER:  Of course, your Honor, but I'm simply conveying to the Court from standing next to this gentleman since July of 2018 and what has gone on - not that the Court is

190918valentineS            Sentence

not aware - I just can't see home confinement serving any more of an effect in a positive way than it was deemed by the Court back in April of this year when they withdrew that part of his bail release, Judge.

THE COURT:  All right.  Are there any other comments you'd like to make on behalf of your client?

MR. MAHER:  Simply that this is, as I said, Judge, the one case in a 100 where I can say to my client, please -- and he and his parents, as well as the government, the government got involved in this, too, Judge, and I deeply appreciate dealing with Mr. DeFilippis, and his office, but I'm asking that my client be able to continue on the path in his life that is recommended not just by me, your Honor, but by the people, by the government.

Nothing further.

THE COURT:  All right.  Thank you, Counselor.

Mr. Valentine, would you please rise.

Is there anything that you'd like to say on your own behalf before the Court imposes sentence upon you?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  If it's easier for you to sit and read your statement, you can do so.

MR. MAHER:  Or if you want to stand and hold it, you can.

THE DEFENDANT:  Your Honor, I sincerely regret the

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

190918valentineS          Sentence

actions I took that led me to where I am today. I recognize that at the time, I was not myself and in a state of delusion. Everything that led up to the arrest stemmed from a psychiatric impairment, not from drugs or alcohol. I'm not and never was a violent person. During the episode, I tried to fit the image of someone that I'm not. I want to apologize to all those who have been affected by my actions, including family and law enforcement.

Since the arrest, I've taken grave steps in rehabilitation, including seeking therapy, taking my medications, and, as prescribed, communicating with the government. As you may know, I'm currently on an antipsychotic injection. I've not missed a single dose, and I'm not planning on coming off without the doctor's consent. I want to thank everyone who has helped me through the process, including my family, my therapist, my doctor and my lawyer.

Before the arrest, I was a student studying biology at Chapman University with a scholarship. In high school, I was the captain of the cross-country team and took my academics very seriously. In the later part of my time at Chapman, I began to experience delusions, sprouting from a state of depression that had hit me. I delved deep into religion, looking for answers. At this time, it is still very unclear to me how I began to sympathize with the Islamic state. What I do know is that I did not take my illness with seriousness. I was

190918valentineS            Sentence

in denial about my state and things spiraled out of control.

I want to thank the government for saving me before things got any worse.  I'm now much more lucid and aware of my actions and the impact they have on those around me.  I stay away from the dark web and have restored my original faith. I'm enrolled full-time in Mount Saint Mary College, studying business administration and management, with the hopes of securing a meaningful future for myself.

These are a few things I can promise you:  I promise to control my actions.  I promise to stick to my medications. I promise to continue to attend therapy.  And I promise to stay within the letter of the law.

I fully realized the consequences of my actions and what they have had on myself and on others.  I believe incarceration would have a negative and irreparable effect on me; therefore, I'm asking for leniency upon sentencing.

Thank you for giving me the opportunity to speak, your Honor.

THE COURT:  All right.  Thank you, Mr. Valentine. You may be seated.  This is going to take a little bit of time.

In accordance with the decision by the Supreme Court in the *United States v. Booker*, while the United States Sentencing Guidelines are not mandatory, this Court nonetheless must consult those guidelines and take them into account when sentencing.  Therefore, this Court has considered the findings

190918valentineS          Sentence

of fact stated in the presentence report, as well as the guidelines analysis and recommendations contained therein. This Court has weighed this information along with the factors listed in 18 U.S.C. Section 3553(a) in coming to its final sentencing decision.

The Court adopts the factual recitation in the Presentence Investigation Report.  The Presentence Investigation Report includes a computation that Mr. Valentine's offense level amounts to 14, and his criminal history falls into Category I.  The guideline range of imprisonment for that offense level and Criminal History Category listed in the presentence report is 10 to 60 months' imprisonment, followed by one to three years of supervised release.

Mr. Valentine, you have been found guilty of making a false statement in a firearm filing, in violation of 18 U.S.C. Section 924(a)(1)(A), because on or about June 2, 2018, in the Southern District of New York, you knowingly made false and fictitious written statements to a licensed dealer of firearms on the ATF form called 4473 in connection with your attempted purchase of advanced armament.

The probation office has recommended that the Court impose a sentence of time served – one day – followed by three years of supervised release, including six months of home confinement.

190918valentineS            Sentence

The probation office notes that for this offense, you must pay a special assessment of $100 in accordance with 18 U.S.C. Section 3013.  Additionally, the probation office has recommended that no fine be imposed.

Subsection(a)(1) of 18 U.S.C. Section 3553 requires that courts take into consideration the nature and circumstances of the offense and the history and characteristics of the defendant.

Subsection(a)(2) of 18 U.S.C. Section 3553 requires that the court consider the need for the sentence to promote certain objectives of the criminal justice system, namely, punishment, specific and general deterrence and rehabilitation. The court must also consider the kinds of sentences available, the Sentencing Guidelines, pertinent policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims.

Give me a moment.

I have considered the arguments made by both sides and the information provided by the parties, including Mr. Valentine's acceptance of responsibility for his actions and criminal history and the seriousness of his crime.

Taking into account the nature and circumstances of the offense -- so the record is clear, I think said the offense level was 14, but it's actually 12.

Taking into account the nature and circumstances of

190918valentineS          Sentence

the offense and the history and characteristics of the defendant, and considering all of the factors listed in 18 U.S.C. Section 3553(a), this Court finds that a sentence of time served, followed by a term of three years of supervised release, is reasonable and appropriate and that such term is sufficient, but not greater than necessary, to promote the proper objectives of sentencing.

In addition, the defendant is ordered to pay to the United States a mandatory special assessment of $100, which shall be due immediately.

Finally, based on the presentence report's recommendation, I will not impose a fine.

Mr. Valentine, upon your release from custody, you shall be placed on supervised release for a period of three years. During your term of supervised release, you must comply with the standard conditions of supervision, as well as the following mandatory conditions of supervision:

One, you must not commit another federal, state or local crime. You must not unlawfully possess a controlled substance. You must cooperate in the collection of DNA as directed by the probation officer. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from custody and at least two periodic drug tests thereafter as determined by the Department of Probation. You must comply with the standard

190918valentineS          Sentence

conditions that have been adopted by this Court, as well as with any other conditions.

In addition, Mr. Valentine, you must obey the following special conditions while on supervised release:  You must participate in an outpatient mental health treatment program approved by the probation office.  You must continue to take any prescribed medication, unless otherwise instructed by the healthcare provider.  You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments.

The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the Presentence Investigation Report, to the healthcare provider.

You shall submit your person and any property, residence, vehicle, papers, computer and any other electronic devices, or storage devices, to a search by the United States Probation Office and officers, and, if needed, with the assistance of any law enforcement officers.  The search is to be conducted when there is reasonable suspicion concerning a violation of the conditions of your supervision or unlawful conduct by you during the time that you're supervised.  Failure to submit to search may be grounds for revocation of your supervised release.

You shall warn any other occupants that the premises

190918valentineS          Sentence

may be subject to a search pursuant to these conditions.  Any

search must be conducted at a reasonable time and in a

reasonable manner.

          Mr. Valentine, because you are currently enrolled in

school, I'm not going to impose home confinement --

          THE DEFENDANT:  Thank you.

          THE COURT:  -- during the time of your supervised

release, all right?

          I'm going to ask you one thing.  You have to maintain

a B average.  Can you do that?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  Mom, you're going to make sure he

maintains a B average?

          MOTHER:  Yes.

          THE COURT:  It is recommended that you be supervised

by the district of residence.

          Mr. Valentine, do you understand each and every one

of these conditions?

          THE DEFENDANT:  Yes, your Honor.  I do understand.

          THE COURT:  You shall report to the nearest probation

office within 72 hours of release from custody.  The Court

recommends you be supervised by your district of residence.

          The sentence as stated is imposed.

          Mr. Valentine, you have the right to appeal your

sentence.  Any notice of appeal must be filed within 14 days

190918valentineS          Sentence

after the entry of judgment.  So if you wish to appeal, you must advise your attorney to prepare and file a notice of appeal immediately.

If you're unable to pay the cost of an appeal, you have the right to apply for leave to appeal *in forma pauperis*, meaning as a poor person.  If you make such a request, the Clerk of the Court must immediately prepare and file a notice of appeal on your behalf.

Do you understand your right to appeal to the extent it may exist?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are there any other remaining counts or underlying information that needs to be addressed at this time or dismissed?

MR. DeFILIPPIS:  Yes, your Honor.  The government moves to dismiss the open count, which is Count One of the information.

THE COURT:  I take it there is no opposition.  The application is granted.

Anything else from the parties?

MR. DeFILIPPIS:  Not from the government.

MR. MAHER:  Nor from the defendant, your Honor. Thank you.

THE COURT:  Mr. Valentine, I wish you much luck.

My hope is that the next time we see each other, it

190918valentineS            Sentence

will either be at a social gathering or at your graduation or something to that effect.  Just stay focused.  Everything is going to be good.

I don't know if you are religious man, but prayer always helps me.  During my time of crisis or tension, I meditate.  Helps me relax.  I'm married with children, so I meditate a lot.  But I wish you much luck, all right?  Stay focused.  Stay with the treatment plan.  It's a good thing, it's not a bad thing, it's a good thing, and don't think of it as a negative thing, all right?

Everyone, even judges, need help.  And the worst thing that we can do is not get the help that we need.  You're getting the help that you need, and that's a good thing, that's a positive thing.  Fair enough?

THE DEFENDANT:  Yes, your Honor.  Thank you.

THE COURT:  Anything else?

MR. MAHER:  Nothing, Judge.

THE COURT:  Good luck.

THE DEPUTY CLERK:  Court in recess.

- - -

Certified to be a true and correct transcript of the stenographic record to the best of my ability.

_____
U.S. District Court
Official Court Reporter

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053